# ENO COTTON MILLS

*vs.*

## E. TILESTON MUDGE ET AL.

*Accord and Satisfaction—Necessity of Performance.*

An agreement made in adjustment of a dispute as to the legal rights of the parties is based on a valid consideration. p. 304

Where, upon complaint by a purchaser of paper that it was not properly cut, the seller and the purchaser agreed, by way of compromise, that the latter should use as much as possible of the paper and return the balance, the purchaser could not return the paper not used by him and ask for reimbursement of the price paid for that much of the paper, without showing that he had used as much of the paper as possible. p. 305

*Decided June 29th, 1921.*

Appeal from the Superior Court of Baltimore City (AMBLER, J.).

Action by the Eno Cotton Mills, a corporation, against E. Tileston Mudge and Arthur P. Mudge, trading as Dobler & Mudge. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*L. Vernon Miller*, with whom was *William L. Marbury* on the brief, for the appellant.

*Randolph Barton, Jr.*, and *Malcolm H. Laucheimer*, for the appellees.

URNER, J., delivered the opinion of the Court.

The appellant is a corporation engaged in the manufacture of cloths and yarns at Hillsboro, North Carolina, and the appellees are in the wholesale paper business in the City of Baltimore. In August, 1918, the appellees sold to the appellant 11,914 pounds of blue textile wrapping paper, which was duly delivered and for which the purchase price, amounting to $1,273.34, was fully paid. The paper was to be furnished in sheets of specified dimensions, with the corners cut out in such a way as to admit of the sheets being properly folded as covers for the goods upon which they were intended to be used. The delivery of the paper occurred during the month of December, 1918, but, its early use not being required, it was stored away and left unexamined until the following June when, some of the packages being opened, it was found that the corners of many of the sheets had not been cut out properly, and that much of the paper consequently was not adapted to the purpose for which it had been purchased. As the result of negotiations on the subject, it was agreed that the appellant should use as much of the paper as it possibly could, and then return the remainder to the appellees, who were to make a proportionate repayment of the purchase price. In October, 1919, the appellant proposed to return 8,174 pounds of the paper, and demanded reimbursement of the price paid for that much of the quantity originally ordered. The proposal and demand thus made were refused by the appellees on the ground that the appellant had not used all of the paper available for its needs. Suit was soon afterwards brought on the agreement for repayment to which we have referred, and the trial resulted in a directed verdict for the defendants. The decisive question is whether the evidence in the case, which was offered wholly by the plaintiff, was legally sufficient to entitle it to recover on the special agreement upon which the suit is based.

In order to secure a verdict it was necessary for the plaintiff to prove that the agreement on its own part had been

duly performed. It had agreed to use as much as possible
of the paper supplied by the defendants, and it was only
as to the residue that they were to make repayment. The
agreement was the means of compromising a disputed ques-
tion of liability. The defendants had denied that they were
legally bound to take back the paper and repay the purchase
price in view of the fact that the complaint as to the cut-
ting was not made until six months after delivery, when they
were no longer in a position to have recourse to the establish-
ment where the paper had been thus prepared. It was in
the adjustment of the dispute on this subject that the parties
entered into the agreement upon which recovery is now
sought, and which clearly, therefore, rests upon a valid con-
sideration. *Scheffenacker* v. *Hoopers,* 113 Md. 111; *Em-
mittsburg R. R. Co.* v. *Donoghue,* 67 Md. 389.

According to the plaintiff's own proof, there was a failure
on its part to fulfill the condition upon which its claim for
repayment was agreed to depend. Its treasurer testified that
some of the paper had never been opened. It was delivered
to the plaintiff in seventy-five packages, enclosed in manila
paper coverings and tied with rope. The packages varied
in weight from 150 to 175 pounds. The plaintiff's superin-
tendent testified that only twenty-eight or thirty of the bun-
dles were opened, and from them usable paper was obtained
to the amount of about twenty-five per cent. of the total
shipment. In describing the result of his recent examina-
tion of the previously unopened packages, the witness said:
"They are eight inches thick and maybe two and a half inches
on top would be right," "it seemed as if every time the cut-
ter cut he cut about a two-inch block at a time, and none of
these blocks straight through any bundle were the same size."
This appears to have been the condition of all the packages.
To measure the contents of those left intact, it would have
been necessary, as the same witness said, to take the ropes
off and open up the wrappings. As a considerable quantity
of suitable paper was found in the packages which were

opened for use, it may be assumed, and indeed the testimony referred to tends to prove, that the opening of the other packages would have produced similar results. It was probably a troublesome process to sort out the available sheets from those which had been improperly cut, but this had to be done if the plaintiff was to perform its agreement to use as much of the paper as possible before calling upon the defendants for any reimbursement. It appearing from the proof offered by the plaintiff itself that it failed to discharge the contractual duty upon which its right of recovery in this suit was dependent, we can have no doubt as to the propriety of the action of the court below in withdrawing the case from the jury.

This conclusion renders immaterial the other exceptions in the record, which relate to the exclusion of evidence offered by the plaintiff upon the question as to whether, in view of the customary course of business in the plaintiff's mill, and other plants of the same kind, the inspection of the paper purchased from the defendants was unduly delayed. The compromise agreement makes that inquiry unimportant, and if the excluded evidence had been admitted, it could not have affected our decision.

*Judgment affirmed, with costs.*