BRYER, Etc. *v.* RATH PACKING COMPANY

[No. 77, September Term, 1959.]

*Decided December 11, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert G. Tobin, Jr.,* with whom was *Howard J. Thomas*
on the brief, for the appellant.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simp-
son, H. Algire McFaul* and *Simpson & Simpson* on the brief,
for the appellee.

HAMMOND, J., delivered the opinion of the Court.

A small chicken bone that lodged just below the epiglottis
in the esophagus of a girl eating chicken chow mein in the
school cafeteria brought about this appeal. The child's father,
on his own behalf and as next friend of his daughter, brought
a suit in tort for the negligence of the packer of sealed cans
advertised as containing "Ready to Serve Boned Chicken"
from which the manager of the cafeteria had taken the chicken
used in the chicken chow mein. At the conclusion of the
plaintiff's case the trial court directed the jury to find for the
defendant.

The cafeteria manager, who had had fifteen years experi-
ence, testified that the chicken used in the chow mein came
in sealed cans of the defendant that were "all in perfect con-
dition." She used boned ready to serve chicken because it
was boneless. She said that formerly her staff had prepared
their own chicken but had found that in picking the meat
from the bone there was the possibility of bone getting into
the meat, and that she had "stopped using fresh chickens for
that reason." After the accident a check of the unserved

remainder of the chow mein revealed in it other small bones, or splinters of bone, about an inch or an inch and a half long.

Appellant contends, and appellee concedes, that in Maryland, as in most jurisdictions, the packer of food products in sealed containers represents to the consumer that the contents of the can or package are suited to the purpose for which they are intended, and that when the consumer eats the product, relying on the assurance of the packer that it is fit and safe to eat, he has a right to insist that the packer shall have exercised reasonable care to see that it is so fit and safe. If proper care has not been exercised, the packer is liable to the consumer for injury that may result. *Goldman & Freiman Bottling Co. v. Sindell,* 140 Md. 488; *Armour & Co. v. Leasure,* 177 Md. 393; *Cloverland Farms Dairy v. Ellin,* 195 Md. 663, 670. The parties likewise agree, as the cases just cited indicate, that where a foreign substance or a deleterious ingredient is found in food taken directly from a sealed container, there arises a strong inference that it was there at the time of the sale by the packer and that the packer was negligent. 2 Harper and James, *Torts,* Sec. 28.14, p. 1565. See also *Great Atlantic & Pacific Tea Co. v. Adams,* 213 Md. 521, 526.

The narrow issue on which the parties differ, and on which, as we see it, the case turns, is whether bones which are natural to the type of food eaten but which generally are not found in the style of the food as prepared are to be deemed the equivalent of a foreign substance in determining whether the food in which they are is reasonably fit and safe for human consumption. There are cases both ways. Some are suits on implied warranty, some where the claim is based on negligence. The action for breach of warranty was originally a tort action for breach of duty assumed, and a number of decisions have considered the original tort theory very much alive. In the warranty cases the Courts have said the warranty is one of merchantable quality or fitness for the general purpose for which the goods are sold which, in the food cases, means reasonably fit and safe for human consumption. Prosser, *Torts,* Sec. 84, p. 507 (2d Ed. 1955). In 2 Harper & James, *Torts,* Sec. 28.22, note 1, it is observed: "Thus in

*Burkhardt v. Armour & Co.,* 115 Conn. 249, 161 Atl. 385 (1932), the foreign substance in corned beef constituted both negligence (as to the packer) and breach of warranty (as to the retailer). And the same question whether a chicken bone in a chicken dish, an oyster shell in canned oysters, or a cherry pit in cherry pie prevents the article from being 'reasonably fit for human consumption as food,' comes into the warranty cases as it does into those grounded on negligence."

Because the question of fitness and safeness for human consumption is measurable by the same tests in both the warranty cases and the negligence cases in which negligence is proven or properly to be inferred, both classes of cases may be precedents of value in deciding the case before us. Compare *Childs Dining Hall Co. v. Swingler,* 173 Md. 490.

There are four leading cases holding that the presence of bone natural to the product eaten does not make the supplier liable to one injured by the bone. In *Mix v. Ingersoll Candy Co.* (Cal.), 59 P. 2d 144, the injury was caused by a chicken bone in a chicken pie. The Court found that, under the Sales Act, which was held applicable, food must be reasonably fit for human consumption and a deviation from perfection of such a nature as in common knowledge could reasonably be anticipated and guarded against by the partaker of the food is not a breach of warranty. The Court said that as a matter of common knowledge chicken pies often contain chicken bones, that bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and "a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones" (p. 148). The *Mix* case was followed in California by *Silva v. F. W. Woolworth Co.,* (Dist. Ct.) 83 P. 2d 76, where a customer was served a "special plate" of roast turkey and swallowed a turkey bone. *Brown v. Nebiker* (Iowa), 296 N. W. 366, relied on the *Mix* case in holding that a small bone in a pork chop was not a foreign substance and that "One who eats pork chops, or * * * spare ribs * * *, or the type of meat that bones are natural to, ought to anticipate and be on his guard against the presence of bones, which he knows will be there." An intermediate appellate court in Illinois, in *Good-*

win v. *Country Club of Peoria,* 54 N. E. 2d 612, followed the cases which have been cited above in holding that a bone in creamed chicken (made of turkey meat) was not to be deemed a foreign substance, and that the restaurant keeper's warranty that food is fit and wholesome to be eaten is not violated when he leaves in a meat dish bones natural to that meat.

Three States have taken a contrary view. In *Wood v. Waldorf System, Inc.* (R. I.), 83 A. 2d 90, the plaintiff was injured when she swallowed a chicken bone while eating a bowl of chicken soup which contained rice or barley and diced carrots. In answer to the argument that "a chicken bone of this type is natural or perhaps necessary to the preparation and serving of chicken soup," the Court said (p. 93) : "* * * we do not think that it is necessary, natural or customary that harmful bones be allowed to remain concealed in this type of soup as finally dispensed to a customer so as to relieve the purveyor of such food of all responsibility. In our judgment the question is * * * whether the presence of such substance, if it is harmful and makes the food unfit for human consumption, is natural and ordinarily expected to be in the final product which is impliedly represented as fit for human consumption. * * * [T]he kind of soup served here is not to be compared with food which normally contains an obvious bone, or that ordinarily is expected by the customer to have a bone or bones therein, such as certain steaks, chops or fish." Continuing, the Court noted that the weight to be given an inference that there was a lack of ordinary care "* * * will vary with circumstances, depending upon the nature of the food and of the harmful substance, the established custom to be expected by the patron in connection with the serving of such food, and the relation of these elements to the other facts in evidence. But the weight to be given such inference in a proper case is for the jury to determine."

A warranty case in the Supreme Court of Pennsylvania is *Bonenberger v. Pittsburgh Mercantile Co.,* 28 A. 2d 913. There a lady emptied a can of oysters in a pan of milk in the preparation of a stew, and in tasting the stew swallowed a sharp oyster shell about the size of a twenty-five cent piece.

The defendant had testified that it was not practical in the process of canning oysters to eliminate all shells and that if the packer reduced the number of shells in a gallon of oysters to four, which would be one shell in each two pints of oysters, it would generally be conceded that he had done a "cracker-jack" job. It was argued to the Court that a pebble in a can of beans or a piece of tin in a can of corned beef might make the food product unfit for human consumption, but that the case before the Court was a different situation because the shell was a part of the oyster, just as bone is a part of steak and a single cherry stone naturally and ordinarily might be expected to turn up in a cherry pie or in a can of cherries. The Court decided that it was for the jury to pass upon the testimony and that it could not be held as a matter of law that the oysters were reasonably fit for human consumption.

In *Roseberry v. Wachter* (Super. Ct., Del.), 138 A. 273, a patron of a restaurant, while eating chicken noodle soup, swallowed a splinter of chicken bone which lodged in his throat. The court sent the case to the jury on instructions that told them the action was based on negligence and that, while the restaurant was not an insurer, they must determine whether the patron had been served food which was fit for human consumption and which could be partaken of without causing sickness, injury or endangering human life.

There is an annotation in 143 A. L. R. 1421, in which the cases to which we have referred and others are discussed.

We think that the case at bar is more nearly akin to the case relied on by the claimants, which hold that the question of whether the food was fit for human consumption is for the jury, than to those relied on by the packer. The obligation of the packer of food to the ultimate consumer is to exercise such care in its preparation that the product will not cause injury to the consumer, and the amount of care that is required is commensurate with the danger to the life or health of the consumer that may foreseeably result from such lack of care. In the instant case the packer of the chicken set its own standard of care and increased the necessary amount of care by expressly representing on the cans sold that the product was ready to serve and boned. By its advertising

it was saying to the ultimate consumer that this was chicken from which the bones had been removed, and this assurance, which it must have foreseen would be relied on (as indeed it was in the case before us, as the cafeteria manager explicitly testified), required it to exercise as much care as would enable users to rely with reasonable safety on the assurance This is not to say that the packer was an insurer, for it is clear, and agreed, that in the form of action brought it is not. The question is whether due care was exercised under the circumstances.

In arguing there was no lack of due care, the packer attempts to distinguish the cases relied on by the claimants on the ground that the food involved in them did not require mastication. The argument is that the consumer is less likely and less able to guard against a bone in liquid or soft food than in food he must chew. The cases favorable to the packer, such as those of the chicken bone in the chicken pie, the pork bone in the pork chop, and turkey bone in the "special plate" of turkey, all found that the presence of the bone in the dish being eaten was not unlikely and therefore was to be guarded against by the eater. The precautions the supplier could legitimately anticipate would be taken by the consumer were such that the bones did not make the food in which they were present not reasonably fit or safe for human consumption.

We think the express representations by the packer in this case that the chicken had been boned, and its knowledge that boned chicken would often be served in styles in which bones are not normally and naturally expected to be found, including chicken chow mein, make the claimant's cases applicable. Where the injury resulted from swallowing a bone in chicken that had been cut up and packaged for fricassee, the Court, in *Wieland v. C. A. Swanson & Sons,* 223 F. 2d 26, 27 (2nd Cir.), found claimant could not recover if the injury was inflicted by a whole chicken bone (not a sliver)—"For it is undisputed that bones are normally left in chicken as cut up for fricassee, and this fricassee was not held out to be boneless. * * *"

It is common knowledge that there are constituent parts of chow mein of a size, shape and crispness so similar to the

small bones or slivers in evidence in this case as to make the bones or slivers, even if anticipated, difficult to guard against.

It is our opinion that the representations of the packer, the to-be-anticipated use of the chicken expected to be boneless, and the nature of the food in which the bones were found would permit the trier of fact to find that (a) the chicken bones or slivers that were in the chow mein were "something that should not be there" (to use the words of *Cloverland Farms Dairy v. Ellin, supra,* at page 671 of 195 Md.), and (b) because of their presence the chow mein was not reasonably fit or safe for human consumption as food.

*Judgment reversed and case remanded for a new trial, with costs to be paid by the appellee.*