ELIZABETH C. LOH *v.* SAFEWAY STORES, INC. ET AL.

[No. 1668, September Term, 1979.]

*Decided November 7, 1980.*

The cause was argued before MOYLAN, J., and RICHARD M. POLLITT, Associate Judge of the First Judicial Circuit and M. ALBERT FIGINSKI, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Stuart C. Law,* with whom were *Law, Murphey & McKee* on the brief, for appellant.

*John H. Bolgiano,* with whom were *Smith, Somerville & Case* on the brief, for appellee Safeway Stores, Inc.

FIGINSKI, J., delivered the opinion of the Court.

This is an appeal from a judgment entered, upon motion pursuant to Rule 610, by the Circuit Court for Anne Arundel County. Summary judgment was granted, after a hearing, upon the lower court's determination that appellant's claim

had been satisfied under the principle in *Scheffenacker v. Hoopes,* 113 Md. 111 (1910). On appeal, appellant argues that this venerable precedent has been misapplied, and that summary judgment was granted improperly. Alternatively, appellant argues that the court below failed to take proper account of the Uniform Contribution Among Tortfeasors Act, Article 50, §§ 16-24, Md. Code.

Elizabeth C. Loh, appellant, on March 31, 1977, purchased a five ounce package of "12 Beef Franks N' Blankets" from a Safeway store on Ritchie Highway in Arnold, Maryland. The franks were produced by Garden State Kosher Provisions (hereinafter called Garden State) and sold to Safeway through Durkee Foods. Appellant went home and heated, for eating, her purchase. Instead of a choice morsel of delight, she "felt a sharp pain in one of her teeth" resulting from a "bone or similar foreign substance" contained in one of the "Franks N' Blankets." Her tooth was broken. She retained counsel to seek compensation for her injury.

Counsel for appellant was in contact with the insurance carrier for Garden State. On November 21, 1977, the insurer sent to appellant's counsel a check in the amount of $1,000 which the accompanying letter said was "intended to be in full payment of Mrs. Loh's claim." The letter acknowledged that there was no mutually agreed upon settlement figure, but the insurer stated "we want your client to have what we believe would be the full value of her claim." The insurer did not admit liability, but, rather, sought an "amicable conclusion" to Mrs. Loh's claim. The insurer's letter concluded with the comment that the check "represents the maximum value to us for settlement of this claim."

Appellant's counsel deposited the $1,000 check and distributed its proceeds to appellant. On December 2, 1977, appellant's counsel wrote to the insurer's agent acknowledging receipt and deposit of the check. However, the letter stated that "we must advise you that we do not consider the $1,000 payment to be in full settlement of Mrs. Loh's claim." Further, the letter recited the previous settlement negotiations. Appellant's counsel concluded the

letter by reiterating that the deposit of the $1,000 "does not constitute settlement or satisfaction of Mrs. Loh's claim, nor does it bar us from commencing suit in this matter." Gratuitously, appellant's counsel acknowledged that the $1,000 would be applied to whatever final judgment would be rendered in the case.

Two weeks later, on December 13, 1977, appellant filed suit in the Circuit Court for Anne Arundel County. The declaration bore the denomination "implied warranty" and was brought solely against Safeway. Appellant alleged breach of warranty and recited, particularly, Sections 2-314 and 2-315, Commercial Article, Md. Code. The ad damnum clause was for $50,000.

Safeway filed a general issue plea and, subsequently, a third party claim against Garden State. The third party claim was stated in two counts. In the first count, Safeway, as third party plaintiff, demanded "that it be indemnified from any liability or damages which may be assessed in favor of [Mrs. Loh] as against [Safeway] . . . [because] the product manufactured by [Garden State] was impliedly fit for consumption and free from any foreign matter or defect." The second count alleged that "as a result of the negligence" of Garden State "in the manufacture of said food product," the plaintiff was injured without any contributory negligence of Safeway.

On April 13, 1978, Garden State filed a plea which, among other things,[1] alleged that "before the issuing of the summons, [it had] tendered to the plaintiff a sum of money in satisfaction of the plaintiff's demand." This reference, of course, was to the $1,000 check forwarded on November 21, 1977.

On January 13, 1979, in response to a request from Safeway, Garden State admitted that "it supplied the frankfurters which were sold to Safeway stores by Durkee" and that "it supplied the meat portion for the Durkee Beef N' Blankets." Garden State did not admit, however, that

---

1. Garden State additionally filed general issue pleas in contract and tort.

"there was any alleged foreign substance in the meat" supplied.

After trial was twice continued, a motion for summary judgment was filed by Garden State on July 2, 1979, and, thereafter, on August 3, 1979, by Safeway. Garden State's motion argued that the acceptance of the $1,000 check sent on November 21, 1977, "constitutes a full accord and satisfaction to any debt which the Plaintiff would be entitled to receive from [Garden State]." Safeway's Motion also sought to take advantage of the appellant's acceptance of the November 21, 1977 check. Safeway argued that it "constituted a full accord and satisfaction of any claim which [appellant] claims as a result of the breach of warranty." Further, Safeway contended:

> "[Appellant] having accepted the check in full accord and satisfaction of the dispute of her claim arising out of the allegedly unfit food product which was initially manufactured by [Garden State] necessarily results in a release of all alleged debtors or tort feasors in that it is a fundamental proposition of law that [appellant] is entitled to but one satisfaction of her claim and cannot after collecting money in settlement of a claim against one person allegedly responsible then, with impunity, proceed by Court action against another without even divulging the fact that [appellant] had received and put to her own use money received from the joint tort feasor or joint debtor."

After a hearing,[2] the learned judge below granted both motions. On the record, the court below stated that appellant had not rejected the November 21, 1977 check, but deposited it and that act "constituted the acceptance, irrespective of what [appellant] may have said." The court below believed

---

2. At the hearing, counsel for Garden State, which is unrepresented on appeal, argued that Safeway and Garden State "could never be joint tortfeasors" because Safeway had not been sued in tort. Consequently, it was argued, the joint tortfeasors Act did not apply and the parties were bound by the "original common law" where "a release of one is a release of all and there can only be one satisfaction."

appellant's claim had been extinguished and that it was immaterial whether "the defendants [i.e., Safeway and Garden State] have a right of contribution or indemnity between them." The lower court relied wholly upon *Scheffenacker v. Hoopes,* 113 Md. 111 (1910) and its reasoning from it.

In *Scheffenacker,* a printer sent a bill for $722.40 for printing certain catalogues. The consumer sent back a check for $361.20 with a letter stating that "you know my dissatisfaction with your work" and that the poor printing job had caused "great damage and injury." The consumer, further, stated, among other things, that, rather than "require [the printer] to make my loss good," he did "not wish a controversy" and, consequently tendered half payment "in full settlement." The printer acknowledged the letter and check, made excuses for the job, and recited that "I am positive that you do not intend to beat me out of the balance of my bill." The printer got the check certified. At trial and on appeal, it was held that the printer used the check and was barred, through accord and satisfaction, from recovering the remainder of the bill. The Court of Appeals, per Judge Urner, wrote, 113 Md. at 117:

> "The plaintiff's expression of dissatisfaction with the defendant's proposal could not qualify the effect of his actual use of the check and appropriation of the defendant's money through its certification, in view of the terms of compromise under which alone it could be used. It was the *use* of the check that determined the question of the acceptance of the offer and not the verbal dissent by which it was accompanied."

Chief Judge Bond, in *Hodgson v. Phippin,* 159 Md. 97, 99-100 (1930) explained the holding in *Scheffenacker,* thusly:

> "The ordinary understanding of a tender of a portion of an amount claimed in full satisfaction of the whole seems to be that it constitutes a conditional offer, that acceptance of the money involves accep-

> tance of the condition, and results in an accord and satisfaction of the whole claim, discharging the unpaid portion. *Hunt, Tender,* sec. 240. And this court has held that acceptance of such a tender has that result even though the claimant protests that he does not accept the terms attached, but takes the money only in part payment. *Scheffenaker v. Hoopes,* 113 Md. 111, 117."

Compare 6 Corbin, Contracts, 1962, § 1279, p. 127. See also, *Stockton v. Frey,* 4 Gill 406, 424 (1846); *Mercantile T. & D. Co. v. Rode,* 137 Md. 362, 377 (1921); *Eno Cotton Mills v. Mudge,* 139 Md. 302 (1921).

In light of the authorities cited, we believe it is clear that, in Maryland, when one party tenders a check in settlement of a dispute, making clear that the tender will satisfy the claim against the tendering party if accepted, the party who accepts and uses the check, even though protesting against settlement, cannot make further claim against the tendering party. Here, Garden State's letter made clear that the $1,000 check tendered on November 21, 1977 was "the maximum value to us for settlement of this claim." Appellant accepted the settlement by depositing the check, regardless of appellant's counsel's protestations to the contrary. As between appellant and Garden State, there was an accord and satisfaction. In addition, strict application of the rule that there may be only one satisfaction for a single injury, see *Cox v. Maryland Elec. Rwys. Co.,* 126 Md. 300 (1915); *Berkley v. Wilson,* 87 Md. 219 (1898), would bar further recovery from any party for the injury to appellant's tooth here.

Appellant, however, seeks to avoid judgments in favor of Garden State and Safeway by reliance upon the Uniform Contribution Among Tortfeasors Act, Article 50, Sections 16-24, Md. Code. Prior to enactment of this legislation, a release of one joint tort-feasor, or satisfaction therefrom,[3]

---

3. As Dean Prosser makes clear, the American decisions "rather hopelessly confused" release and satisfaction. Prosser, Joint Torts and Several Liability, 25 Cal. L. Rev. 413, 423 (1937); Prosser, Torts, 4th ed., p. 301; 1 Harper & James, Torts, § 10.1, p. 711. The effect of either a release or satisfaction at common law was to bar further proceedings or recovery

extinguished a person's right to proceed against all others. As the Court of Appeals wrote in *Gunther v. Lee,* 45 Md. 60, 67 (1876):

> "All the cases, both English and American, maintain the doctrine that satisfaction from one joint tort-feasor, whether received before or after recovery, extinguishes the right as against the others. The plaintiff is not entitled to receive more than one satisfaction for and in respect of the same injury. As was said by the Court in *Lovejoy vs. Murray,* when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected in equity and good conscience, that the law will not permit him to recover again for the same damages. * * * Here the release expresses the consideration on its face, which was received in full satisfaction of the wrong complained of. The proviso in the release, by which the right to recover for the same injury against the other two defendants was attempted to be reserved to the plaintiffs, is simply void, as being repugnant to the legal effect and operation of the release itself."

This rule was severely criticized by academic writers. See e.g., Prosser, Joint Torts and Several Liability, 25 Cal. L. Rev. 413, 421-5 (1937); [4] Wigmore, Release to One

---

from another tortfeasor. See Note, Joint Tort-Feasors — Release of One Joint Tort-Feasor As A Bar To Right of Action Against Others — Satisfaction — Judgments, 22 Minn. L. Rev. 692 (1938).

4. Prosser, *id.,* p. 425:

> "The position that a release of one necessarily releases all seems most unreasonable. A release of one cause of action is not a release of another independent one. The essential question is whether the plaintiff's claim has been satisfied; and this is clearly a matter of the intent of the parties to be determined in the light of the language of the instrument, the amount paid, and the surrounding circumstances. The objection that there may be double recovery is meaningless, for the amount paid under the release must be credited pro tanto to the second tort-feasor. Even as applied to cases of concerted action, the rule that a release of one releases all seems an antiquated survival of common law procedural notions; it has no justification at all in the case of mere concurrent negligence."

Joint-Tortfeasor, 17 Ill. L.R. 563 (1923).[5] And, exceptions to the general rule were, at times, engrafted into the law. See, e.g., *Murphy v. Penniman,* 105 Md. 453, 473 (1907); *McShane v. Howard Bank,* 73 Md. 135, 153-4 (1890). The legislature first created a limited substantive right of contribution among joint tortfeasors in 1927,[6] and, in 1941, enacted the Uniform Act. The Act applies only to joint tort-feasors.[7] It established a right to contribution,[8] expunged the common law rule of release,[9] and preserved rights of indemnification.[10]

Appellant seeks to apply the Uniform Act to overturn the judgments in favor of Garden State and Safeway. Her refuge in the Act poses substantial issues of both a definitional and conceptual nature. To get benefit of the Act, appellant must fit the parties here into the definitions of "joint tortfeasor" and "injured person" found in the Act. Even if that hurdle is overcome, appellant must bring the accord and satisfaction which occurred by the use of Garden State's check within the concept of "release" under the Act in modification of the common law.

Under the Act, joint tortfeasors are defined as "two or more persons jointly or severally *liable in tort* for the same injury to person . . ." [emphasis added], Art. 50, § 16 (a), Md. Code. Further, the Act defines an "injured person" as "any person having a *claim in tort."* [Emphasis added], Art. 50, § 16 (b), Md. Code. The common law rule of release [11] is abrogated, by Art. 50, § 19, Md. Code, when a "release by the injured person [is] of one joint tort-feasor." The statutory

---

**5.** Wigmore fired some choice epithets at the rule, calling it "obnoxious," "aged and infirm, being quite anachronistic," "a surviving relic of the Cokian period of metaphysics" and "the hoary fallacy."

**6.** Allen, Joint Tortfeasors, Contribution, Indemnity and Procedure, 1948, p. 3.

**7.** Art. 50, § 16 (a), Md. Code, provides " 'Joint tortfeasors means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.' "

**8.** Art. 50, § 17, Md. Code.

**9.** Art. 50, § 19, Md. Code.

**10.** Art. 50, § 21, Md. Code.

**11.** See pages 8-10, supra.

provision from which appellant seeks succor, when read with the definitions applicable to the Act, appears limited, on its face, to "tort" actions. In the case on appeal, appellant's declaration was premised upon implied warranty [12] and we must consider whether such a suit is a "tort" action susceptible of coverage by the Act.

Suit on implied warranty has been called "a freak hybrid born of the illicit intercourse of tort and contract." [13] The parties have cited no Maryland case and our own research has disclosed none which has considered whether suit on an implied warranty is a tort action within the purview of the Act. In *Trieschman v. Eaton,* 224 Md. 111 (1961), the Court of Appeals made footnote reference to the issue but did not find it necessary to decide the question.[14] Our research has disclosed, however, the opinion of Judge Miller in *Uppgren v. Executive Aviation Services, Inc.,* 326 F. Supp. 709 (D. Md. 1971), where the United States District Court for the District of Maryland considered whether, for choice of law purposes, a suit based on breach of implied warranty would be considered a tort or contract action by the Maryland courts. There, the parties urged the court to apply "contract-conflict rules" which Judge Miller found to be error, after extensive consideration of "the nature and historical background of an action for personal . . . injury

---

**12.** Appellant sued the party, Safeway, from whom she purchased the product. Note, however, that the strict rules of privity have been relaxed by Section 2-318 of the Commercial Law Article, Md. Code.

**13.** Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1126 (1960). Compare, Freeman & Dressel, Warranty Law in Maryland Product Liability Cases: Strict Liability Incognito, 5 U. of Blt. L.R. 47, 49 (1975).

**14.** See 224 Md. 111, 113, n.1 (1961):

> "The disposition we made of the case renders it unnecessary to discuss the claim against the hospital arising from breach of warranty in the sale of the steel plate alleged to have been defective. Appellants treat the matter as if the hospital were charged only with negligence; appellees say that a negligent actor cannot be a joint, concurrent or successive tortfeasor with one charged with breach of warranty. At least one Court has so said, holding that a release of the original tortfeasor was not a bar to a later action against a physician for breach of contract in not skilfully performing his agreement properly to treat the injured person. *Von Blumenthal v. Cassola,* 3 N.Y.S.2d 246, affirmed without opinion, 6 N.Y.S.2d 342."

based upon breach of warranty." 326 F. Supp. at 714. Judge Miller thoroughly reviewed the writings of the leading authorities, primarily Dean Prosser, and found that "the Maryland Court of Appeals has quoted the views of Prosser with approval relative to the origin of the action for breach of implied warranty and its close kinship to tort." 326 F. Supp. at 715.[15] Finally, Judge Miller concluded, 326 F. Supp. at 716:

> "Earlier Maryland cases discussing the requirement of privity in an implied or express warranty action indicate that privity is necessary, not because the cause of action is bottomed in contract, but because a direct contractual relationship was deemed to be required to create the warranty and the concomitant duty, the breach of which constituted a tort. *State to Use of Bond v. Consolidated Gas, Electric Light and Power Company,* 146 Md. 390, 396, 126 A. 105 (1924). * * * It is believed by this court that the highest court of Maryland, if faced with the necessity to decide the question, would determine that an action based upon an implied warranty (arising from a contract or sale made prior, of course, to the July 1, 1969 effective date of the amendment to Article 95B, § 2-318, Anno. Code of Md.) bears such a close relationship to one based upon tort that it should be subject to the rule of *lex loci delicti* for the same reasons as is a tort action."

Subsequent Maryland decisions [16] holding that the law of

---

15. One of the opinions relied upon by Judge Miller was *Bryer v. Rath Packing Co.,* 221 Md. 105 (1959), a case in which a consumer, allegedly injured by bones found in a sealed container of 'Ready to Serve Boned Chicken', sued the manufacturer alleging both negligence and breach of warranty. There, the Court of Appeals noted, 221 Md. at 109:

> "Because the question of fitness and safeness for human consumption is measurable by the same tests in both the warranty cases and the negligence cases in which negligence is proven or properly to be inferred, both classes of cases may be precedents of value in deciding the case before us."

16. *Frericks v. General Motors Corp.,* 278 Md. 304, 307 (1976); *Volkswagen of America v. Young,* 272 Md. 200, 220 (1974).

the place of the sale governs the extent and effect of the warranties which attend the sale do not undercut the analysis made by Judge Miller. The essential fact remains that "warranty is a matter of tort as well as contract." Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1127 (1960).

Although the Maryland cases continue to discuss products liability in terms of "causes of action sounding in tort... [and] claims based upon breach of warranty", *Frericks v. General Motors Corp.,* 274 Md. 288, 300 (1975), it is clear that, "regardless of theory, a plaintiff must satisfy three product litigation basics from an evidentiary standpoint: (1) the existence of a defect, (2) the attribution of the defect to a 'seller', and (3) a causal relation between the defect and injury." Digges, Product Liability in Maryland Revisited, 7 U. of Blt. L.R. 1, 14 (1977). It must be recognized, therefore, that the warranty action, albeit a "freak hybrid," differs little in fact in products cases from "causes of action sounding in tort." [17]

For the purposes of the Uniform Contribution Among Tortfeasors Act, we conclude that appellant's suit for breach of implied warranty can be a 'claim in tort' which allows appellant to claim the role of an injured person under the Act. A determination that appellant had a 'claim in tort' under the Act does not end our inquiry. Safeway and Garden State must fall into the classification only of joint tortfeasors and they may be so classified if they are *"liable* in tort" [emphasis added] to the appellant.

---

17. Note, e.g., *Mattos, Inc. v. Hash,* 279 Md. 371, 379 (1977) where the Court of Appeals wrote:

"In an action brought for breach of implied warranty of merchantability under § 2-314 of the U.C.C., it is necessary to show not only that the warranty existed, but also that it was breached and that the breach was the proximate cause of the injury. *Giant Food, Inc. v. Wash. Coca-Cola,* 273 Md. 592, 602, 332 A.2d 1 (1975), aff'g *Sheeskin v. Giant Food, Inc.,* 20 Md. App. 611, 620-21, 318 A.2d 874 (1974); see *Erdman v. Johnson Brothers,* 260 Md. 190, 195, 271 A.2d 744 (1970)."

It should be noted, additionally, that contributory negligence may be asserted as a bar to warranty recovery. 279 Md. at 381.

Summary judgment below, predicated upon *Scheffenacker v. Hoopes,* 113 Md. 111 (1910), precluded any judicial determination of liability of Safeway and Garden State in this case. In addition, it must be recognized that the correspondence accompanying the November 21, 1977 check contained a denial of Garden State's liability and, although it admitted to supplying the meat portion of the "frank" alleged to have broken appellant's tooth, Garden State did "not admit there was any alleged foreign substance in the meat portion."

In this context, we review *Swigert v. Welk,* 213 Md. 613 (1957), a case relied upon heavily by appellant. *Swigert* came to the Court of Appeals after the grant of summary judgment in favor of a third party defendant, Welk, who had been impleaded in a case involving a two-car collision in Baltimore City. There, the plaintiff, not a party to the appeal, had executed a release to Welk in consideration of a $3,500 payment. The release, however, denied that Welk was a tortfeasor. When impleaded by Swigert, Welk claimed that the release was a complete bar to the cause of action and the trial court, accepting the argument, granted summary judgment. In reversing, the Court of Appeals decided two points relevant to this case on appeal. First, the Court of Appeals addressed the effect the Uniform Contribution Among Tortfeasors Act had on the common law and, second, the Court directed its attention to the definitions of "joint tortfeasors" and "injured person." The Court wrote, 213 Md. at 619:

> "At common law, a release by the injured party of one of several joint tortfeasors released all. The Uniform Act, of course, changed this. But this Court has held both before and since the passage of the Uniform Act that if several persons be involved in an accident and one of those persons, who has been guilty of no negligence, obtains for himself alone a release from the injured party, it does not affect the liability of the others.

* * *

> The act does not specify the test of liability.
> Clearly, something short of an actual judgment will
> suffice; we think it equally clear that a denial of
> liability will not."

Welk had denied liability in the release obtained from plaintiff.[18] Because Swigert claimed that Welk's negligence contributed to plaintiff's injuries, the Court held that Swigert was entitled to have Welk's motion for summary judgment denied regardless of Welk's freedom from further recovery against him. Only with the third party claim in the case, could Swigert have Welk's liability determined so that Swigert could reduce his liability under the contribution aspects of the Act.

The reasoning and holding in *Swigert* seem peculiarly relevant to the appeal from summary judgment in favor of Garden State in this case. Further, the *Swigert* opinion's reasoning on the effect of the Act on the common law would appear to point to reversal of the summary judgment in favor of Safeway. *Swigert,* therefore, gives the appearance of the terminal point of this opinion. There are, however, two critical distinctions between what the Court of Appeals had before it in *Swigert* and what we face in this appeal. First, in *Swigert,* there was a release with a denial of liability; here, application of the venerable rule of *Scheffenacker v. Hoopes,* 113 Md. 111 (1910), required a finding of an accord and satisfaction between appellant and Garden State. Second, in *Swigert* the third party claim sought contribution; here Safeway sought indemnification from Garden State. These distinctions between what we have here and what was before the Court of Appeals in *Swigert* cause our discussion to proceed further.

The distinction between the effect of a release denying liability and the effect of an accord and satisfaction was one theme of the arguments presented below by Safeway and

---

18. In the case on appeal, the correspondence accompanying the November 21, 1977 check, like the release obtained by Welk, contained a denial of Garden State's liability. Specifically, the tender of the check was accompanied by the statement that "our payment is not an admission of liability."

Garden State. On appeal, Safeway relied upon the accord and satisfaction and, citing *Lanasa v. Beggs,* 159 Md. 311 (1930), argued that appellant "surely is not entitled to attempt a second collection from the retailers."

In *Lanasa,* plaintiff, after accepting a $1,032.40 settlement from Yellow Cab, brought proceedings, seeking $25,000 as damages, against a truck driver who had collided with the cab in which he was a passenger. The Court of Appeals reversed the overruling of a demurrer filed on behalf of the truck driver, writing, 159 Md. at 319:

> ". . . if as a matter of fact the wronged party has actually received satisfaction, or what in law is regarded as its equivalent, from one tort-feasor, he is barred from proceedings against the other tort-feasors."

*Lanasa,* however, was decided a decade before the enactment in 1941 of the Uniform Contribution Among Tortfeasors Act. Although it was cited in *Maryland Lumber Co. v. White,* 205 Md. 180, 199-200 (1954), an order of satisfaction entered by one party involved in "conversion by misdelivery" was said there to have no more effect than reducing the "claim against the other tortfeasor ... by the amount of the consideration paid for the order of satisfaction." In addition, in dictum, the Court of Appeals in *Trieschman v. Eaton,* 224 Md. 111, 116-118 (1961) called *Lanasa* an "earlier" case standing for the common law rule of release of tortfeasors and said that "the Maryland Legislature did away with the rule as to joint tortfeasors by the passage of the [Uniform] Act." *Lanasa,* however, was cited with approval in *Grantham v. Prince George's County,* 251 Md. 28, 39 (1968) and *Bell v. Allstate Insur. Co.,* 265 Md. 727, 730 (1972).

In *Grantham,* plaintiff had sued two doctors and the Board of County Commissioners of Prince George's County for malpractice alleging negligence, breach of warranty and breach of contract. Judgments totalling $60,000 were obtained against one doctor and the Board, but a motion for new trial was granted. Thereafter, settlement negotiations were commenced between the plaintiff's attorney and the

attorney representing the doctor. A figure of $31,802.98 was agreed upon and the docket was noted, according to a "line" or order of dismissal filed by the doctor's attorney which read: "As to [the doctor] only, please enter this matter as dismissed, with prejudice, and the judgment paid and satisfied." Thereafter, the Board filed a motion for summary judgment on the ground that the satisfaction of the judgment against the doctor resulted in a release of the Board. The motion was granted and a plaintiff's motion to vacate was denied. On appeal, the Court of Appeals, per Judge Singley, affirmed the orders. The Court wrote that "Our law is well settled that the satisfaction of a judgment entered against one or more joint tortfeasors releases all of them." 251 Md. at 37. Judge Singley's opinion, however, went on to state:

> "It should be emphasized that we are here dealing with a *judgment which has been satisfied:* not, as was the case in *Treischman, supra,* with a partially satisfied or unsatisfied judgment [citation omitted]; nor with the effect of a release given under the [Uniform Contribution Among Joint Tortfeasors] Act, [citation omitted] (Compare, however, *Maryland Lumber Co. v. White,* 205 Md. 180 . . . , which held that the entry of an *order of satisfaction prior to judgment* was the equivalent of a release under the [Uniform Contribution Among Joint Tortfeasors] Act . . .), but with the entry of a judgment which the parties agree has been *satisfied in full.* [Citations omitted.] 251 Md. at 38-9. [Emphasis added]

Finally, in *Grantham,* the Court concluded that "the Act did not alter the well-established common law rule: further action is barred when a judgment against one tortfeasor is satisfied." 251 Md. at 40.

Judge Singley's care in distinguishing *Maryland Lumber Co. v. White,* supra, and his conclusion that the decision

made an order of satisfaction prior to judgment the equivalent of a release under the Act. would appear to undermine the vitality of *Lanasa* when a release under the Act or its equivalent is before the Court. In such a case, *Maryland Lumber Co. v. White,* supra, would seem to apply. The relevance of this analysis to our case would appear to be clear: is the accord and satisfaction here to be equated with an order of satisfaction before judgment and, hence, be a release of only the one tortfeasor who obtained the accord or does the *Lanasa* rule that there can be but one satisfaction apply to limit the injured person to the satisfaction arising from the accord just as if there had been a satisfaction of a judgment.

After *Grantham,*[19] another decision, *Bell v. Allstate Insur. Co.,* 265 Md. 727 (1972), cites *Lanasa,* and it relates, in part, to an order of satisfaction situation. In *Bell,* the Court refused to "turn its back" on *Grantham* and quoted at length from *Lanasa.* In *Bell,* however, the order of satisfaction at issue was entered upon consent judgments. There was no order of satisfaction prior to judgment as occurred in *Maryland Lumber Co. v. White,* supra.

We conclude that, under Judge Singley's analysis in *Grantham* of *Maryland Lumber Co. v. White,* supra, an order of satisfaction prior to judgment is the equivalent of a release under the Uniform Contribution Among Tortfeasors Act. We conclude, further, that the Act abrogated the common law rule that a release of one joint

---

**19.** On the heels of *Grantham,* the Court of Appeals decided *Pemrock, Inc. v. Essco Co.,* 252 Md. 375 (1969) where the "effect of a release in favor of all mankind" was considered. The Court looked carefully at the release which was before it. In reaching its decision, the Court wrote, 252 Md. at 379:

"The cases have said that if one claim or remedy is pursued to judgment an inconsistent claim is thereafter barred. [Citations omitted]. The theory of the Maryland statements seems to have been that the plaintiff may not again vex the same defendant if he has already taken judgment against him for the same wrong. [Citations omitted]. None of the cases cited just above involved a settlement without judgment. . . .

Various cases in Maryland have said or held that there can be but one recovery for a single wrong, whether the wrongdoers are joint tortfeasors or not [citing *Grantham,* among others], but none is fully comparable to the case before us on the facts."

tortfeasor released all, *Trieschman v. Eaton,* 224 Md. 111, 118 (1961); *Swigert v. Welk,* 213 Md. 613, 619 (1957).[20] Continued reliance on *Lanasa,* is limited to instances where judgments have been satisfied. In the case on appeal we do not have a satisfied judgment; rather, we are confronted with an accord and satisfaction between appellant and Garden State.[21] Logic would seem to dictate that such a satisfaction, arising in law from the acceptance of the tender submitted by Garden State, should be equated with a pre-judgment order of satisfaction.[22] Without judgment, there has been no determination of liability. Garden State's tender specifically denied liability. To paraphrase *Swigert v. Welk,* 213 Md. at 619, when one claiming no liability obtains a release for himself from the injured party, the liability of others is not affected. Safeway, consequently, would not be entitled to summary judgment on the basis of the accord and satisfaction between appellant and Garden State.[23] Under

---

**20.** Where a release is "in favor of all mankind," i.e., discharges not only the payor of the consideration but all others against whom claim may be made, the release bars all further claims. *Pemrock, Inc. v. Essco Co.,* 252 Md. 374 (1969); *Stefan v. Chrysler Corp.,* 452 F. Supp. 262 (D. Md. 1979).

**21.** The correspondence between Garden State's insurer and appellant's counsel disclosed no interest in Safeway and certainly demonstrated no intention to benefit Safeway. Compare, King, Accord and Satisfaction by a Third Person, 15 Mo. L. Rev. 115, 122 (1950).

**22.** In *Trieschman v. Eaton,* 224 Md. 111, 116-7, n.4 (1961) the Court of Appeals wrote:

> "The experts in this field agree that the distinction between satisfaction in form and satisfaction in fact should be determined in every case and control the result. [The Court then quoted from Prosser and cited Harper and James, as well as an] opinion of Judge Rutledge for the Court of Appeals for the District of Columbia in *McKenna v. Austin,* 134 F.2d 659, 664, which repudiated the common law rule [regarding releases] and adopted the reasoning of Prosser and Harper and James."

It should be noted that in a true or pure release situation the intent or understanding of the parties is the primary or "real question" to be asked in gauging the effect of a release. *Lahocki v. Contee Sand & Gravel Co.,* 41 Md. App. 579, 621 (1979), rev'd on other grounds, in *General Motors Corp. v. Lahocki,* 286 Md. 714 (1980). On the contrary, what the parties do in an accord and satisfaction situation binds them regardless of protestations to the contrary. *Scheffenacker v. Hoopes,* supra.

**23.** Safeway has argued on appeal that it could not be liable to appellant. Safeway relied on *Child's Dining Hall Co. v. Swingler,* 173 Md. 490 (1938), a restaurant case. The possible liability of a retailer of sealed containers of food seems, rather, to be governed by *Sheeskin v. Giant Food, Inc.,* 20 Md. App. 611, 629 (1974), aff'd in *Giant Food, Inc. v. Wash. Coca-Cola,* 273 Md. 592, 607 (1975). Note, however, that:

the holding in *Swigert v. Welk,* supra, moreover, even the released party, here Garden State, would not be entitled to summary judgment.

It will be recalled that in *Swigert,* the third party claim was for contribution; in the case on appeal, Safeway seeks to be indemnified by Garden State. Safeway's third party pleading did not seek contribution. The distinction between indemnity and contribution is real.[24] The effect of that distinction in the case on appeal necessarily must be considered in light of the clear provision of the Uniform Contribution Among Tortfeasors Act that it "does not impair any right of indemnity under existing law." Art. 50, § 21, Md. Code. This provision of the statute was considered in *Park Circle Motor Co. v. Willis,* 201 Md. 104, 113 (1952), where the Court of Appeals, after referring to the statutory provision, wrote:

> "There are many instances where an injured third person may recover against either of two persons who are, as far as he is concerned, thus joint tortfeasors. It does not follow, however, in all such

---

"In contrast to the general rule that a retailer is liable in warranty for latent defects, there is a minority view that retailers do not warrant the fitness of products made by others and sold in sealed packages or containers. These cases point either to the inability to inspect or to the lack of reliance on the seller's skill." 2A Frumer & Friedman, Products Liability, § 19.03[4].

Legislation aimed at modifying the liability rules regarding sealed containers was introduced during the 1980 General Assembly. See Senate Bill 495. The bill died, but a commission to study the laws relating to product liability was formed pursuant to Senate Joint Resolution 23. The commission, by the resolution, is charged with reporting to the General Assembly by January 1, 1981.

24. See Leflar, Contribution and Indemnity Between Tortfeasors, 81 U. Pa. L. Rev. 130 (1932); Digges, Products Liability Revisited, 7 U. Blt. L. R. 1, 27 (1977). In 3A Frumer & Friedman, Products Liability, § 44.02[2], the distinction is drawn succinctly:

"It is essential . . . to have a clear understanding of the distinction between indemnity and contribution. * * * Contribution properly refers to the *distribution* among responsible tortfeasors of the loss caused to an injured party, whereas indemnity looks to the full *shifting* of ultimate responsibility to the one who is not only legally but also morally responsible for the loss complained of." [Emphasis in original].

cases that the two wrong-doers are equally liable. There may be, and often are, cases where one of the wrong-doers is primarily liable, and in those cases, such a one must bear the whole loss."

We believe this language in *Park Circle* requires the fashioning of a particularized ruling in light of the hybrid situation caused in this case by the accord and satisfaction which, we have determined, has not barred the litigation. Our belief that there is a need to fashion a particularized ruling is supported by the Court of Appeals' language in *Swigert.* There, the Court noted that neither plaintiff nor defendant could recover against the third party defendant. 213 Md. at 622. Plaintiff was precluded by the release he gave Welk; Swigert's right of contribution would not cause a recovery by him against Welk but would only reduce Swigert's liability to plaintiff. If, however, at trial in the case before us, Safeway were to show, as it alleged, that Garden State was primarily liable, and the verdict exceeded $1,000, Garden State would bear as indemnitor, per *Park Circle,* a loss greater than the peace it won through the accord and satisfaction applicable through *Scheffenacker v. Hoopes,* supra. Garden State may have no right to summary judgment under our reasoning in this case but the accord and satisfaction it obtained should not be rendered worthless by a third party claim of indemnity. The hybrid release or satisfaction determined here, therefore, demands a particularized solution.

We conclude that *Scheffenacker v. Hoopes,* supra, allows Garden State to rest assured that its liability will not exceed the $1,000 it has paid. Applying the Uniform Act as interpreted by *Swigert v. Welk,* supra, summary judgments in favor of Garden State and Safeway were granted erroneously. Appellant may proceed to trial, where liability will be determined in this matter for the first time. If the verdict is against Safeway, but no right of indemnification is found on the third party claim, cf., *Giant Food, Inc. v. Wash. Coca-Cola,* 273 Md. 592, 607 (1975), there will be no issue requiring a particularized solution. Appellant will be

entitled to the benefit of her judgment against Safeway, and the $1,000 already pocketed from Garden State.[25] If, however, Safeway is held liable and wins a judgment in its third party action, against the alleged indemnitor, Garden State, because of the manufacturer's primary liability, appellant should be entitled to nothing more than she has already obtained from Garden State. In this manner, the efficacy of the accord and satisfaction between Garden State and appellant will be maintained and the indemnitor, Garden State, will not lose the benefit of its satisfaction. Needless to say, if Safeway gets a defendant's verdict, no particularized issue will be needed; appellant will have had the benefit of the $1,000 received from Garden State.

Judgments reversed.
Appellees to pay costs.

---

**25.** Safeway's third party claim did not seek contribution. On the pleadings in this case, there is no claim by one tortfeasor for contribution from a joint tortfeasor.