**Donald H. ABRAMS, Appellant,**

v.

**Eugene M. FEINBLATT, Appellee.**

**Civ. No. JFM–87–2079.**

United States District Court,
D. Maryland.

Oct. 30, 1987.

Christopher Tsien, College Park, Md., for appellant.

Lawrence Coppel, Thomas Renda, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., for appellee.

## MEMORANDUM

MOTZ, District Judge.

This is an appeal from the United States Bankruptcy Court for the District of Maryland, the Honorable A. Thomas Small, sitting by designation. Appellant Donald Abrams ("Abrams") contests the Bankruptcy Court's finding that a consent order executed on June 3, 1985, did not have the effect of releasing two partnership interests in Abrams' name which were held by Eugene M. Feinblatt, the trustee of the bankruptcy estate of Joel Kline.

## FACTS

On December 22, 1980, Abrams filed a Complaint for Reclamation against the Trustee in the Kline bankruptcy proceedings. The complaint sought reclamation of two notes in the Trustee's possession alleged to belong to Abrams. On January 30, 1981, the Trustee responded by filing an Answer and Counterclaim.

The counterclaim alleged that Abrams was Kline's agent, nominee, and/or agent in numerous business transactions, many of which either had not been recorded at all or had been recorded incorrectly in general ledgers. The counterclaim also alleged that Abrams had executed an agreement pursuant to which he acknowledged that Kline owned interests, in the name of Abrams, in several partnerships, including

the Mott Industrial Limited Partnership and the Montecito Industrial Partnership. By this agreement, Abrams also agreed to submit to the Trustee a list of all of Abrams' interests in all partnerships in which he had an interest at any time since January 1968, to make available to the Trustee for his review all of Abrams' books and records with respect to any real estate transactions involving any of these partnerships and to engage in good faith negotiations to resolve certain disputed claims with the Trustee.

The counterclaim further alleged that Abrams had failed to perform any of the promises made under this agreement. In particular, it was averred, "Except for the acknowledgements set forth in the annexed Agreement, counter-defendant has refused without reason, justification or excuse to provide any information to the Trustee concerning his dealings with the Bankrupt in response to the Trustee's demand therefore." As relief, the Trustee sought an order requiring Abrams to perform the agreement and "to fully and completely account to the Trustee for all real and personal property received by the counter-defendant, in his capacity as the bankrupt's agent, nominee and/or partner, and not previously accounted for to the Trustee." In addition, the Trustee sought an order directing Abrams "to transfer, assign or pay over to the Trustee, all real and personal property which, upon an accounting, has been determined to belong to the Bankrupt."

Abrams subsequently filed an answer and, after discovery, filed a motion for summary judgment both as to his complaint and the Trustee's counterclaim. In the papers which he filed in support of his summary judgment motion, Abrams made it clear that the Trustee's interests in the Mott and Montecito partnerships were undisputed. The Bankruptcy Court denied Abrams' motion, and the case went to trial. The Court denied Abrams' complaint in its entirety, and, late into the evening on the day before the counterclaim was to be tried, the parties engaged in settlement negotiations. These negotiations resulted in the consent order which is the subject of this appeal. It provided that the Complaint for Reclamation was denied, that Abrams was to turn over various funds held in escrow concerning one of the notes with which the Complaint was concerned, that Abrams was to pay a sum of money pursuant to specified terms, and that the Trustee "be and is hereby authorized to dismiss Counts I, II, and IV of the Amended Counterclaim with prejudice, and the Trustee is further authorized to execute a Release to Abrams of all claims against him which are known by the Trustee to exist."

Abrams subsequently submitted a proposed release which provided, *inter alia,* that the Trustee release claims against the Mott and Montecito partnerships. The Trustee rejected this proposed release, contending that the consent order did not contemplate release of the Trustee's interests in those two partnerships. The Trustee then tendered a release of his own to Abrams. Being unsatisfied with the terms of that release, Abrams filed a motion to compel the Trustee to sign Abrams' proposed release. Judge Small held a hearing (by telephone) on the motion and subsequently issued a Memorandum and Order ruling in favor of the Trustee.

## DISCUSSION

█ The primary issue presented by this appeal is the meaning of the phrase in the consent order "all claims against ... [Abrams] which are known by the Trustee to exist." Abrams alleges that this language was intended to cover the Trustee's interests in the Mott and Montecito partnerships. The Trustee, on the other hand, contends that his interests in those partnerships did not constitute "claims" because Abrams had acknowledged the Trustee's interests before the Trustee's counterclaim (the settlement of which was the subject matter of the consent order) was ever filed.

Abrams alleges that the Trustee, like Humpty Dumpty, is defining words to suit his own meaning. This argument is somewhat off the wall. It could be at least as well argued that it is Abrams who is defining terms to suit his own meaning: if a

person admits that he is holding a property for someone else, the other person's interest in that property is a completed one, not just a claim. By this reasoning Abrams' argument is defeated by the plain language of the consent order.[1]

■ Assuming, however, that there is an ambiguity in the term "claims" as used in the consent order, Abrams fares no better on this appeal. The determination of whether a consent decree or contract is ambiguous is a question of law subject to plenary review. *See, e.g., South v. Rowe,* 759 F.2d 610, 613 (7th Cir.1985); *North Shore Laboratories Corp. v. Cohen,* 721 F.2d 514, 519 (5th Cir.1983); *Fox v. United States Department of Housing and Urban Development,* 680 F.2d 315, 320 (3rd Cir.1982). However, the resolution of the ambiguity by reference to extrinsic evidence involves the finding of fact, and it is subject to review under the clearly erroneous standard. *See St. Lawrence Cement, Inc. v. Spivey,* 815 F.2d 965, 968 (4th Cir. 1987); *South,* 759 F.2d at 613; *North Shore Laboratories,* 721 F.2d at 519; 4 S. Williston, *A Treatise on the Law of Contracts* Section 616, at 652 (3d ed. 1961). Here, Judge Small's factual finding as to what the parties intended was not clearly erroneous. To the contrary, it was fully supported by the fact that, as previously indicated, Abrams had acknowledged the Trustee's interests in the Mott and Montecito partnerships before the Trustee's counterclaim was ever filed. Furthermore, by the time the consent order was negotiated,

Judge Small had denied Abrams' Complaint for Reclamation and the settlement related only to the Trustee's remaining claims against Abrams. Under these circumstances Judge Small was clearly entitled to find, as he did, that it would have been entirely unreasonable to interpret the consent order as requiring the Trustee to release what were his undisputed interests in the two partnerships. *Cf. White v. Roughton,* 689 F.2d 118, 120–21 (7th Cir.1982), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983). Indeed, if this Court were making a *de novo* determination, it would make the same finding as did Judge Small.[2]

Abrams makes an ancillary contention that dismissal of the counterclaim bars the Trustee's "claim" to his interests in the Mott and Montecito partnerships by *res judicata.* There are two fallacies in this contention. First, in the counterclaim the Trustee was seeking recovery of property interests, belonging to Kline and held in his name by Abrams, other than those interests, including the interests in the Mott and Montecito partnerships, which Abrams had previously acknowledged he was holding for Kline. Second, the dismissal of the counterclaim was part and parcel of the consent order, and its meaning and effect must be interpreted in the context of that order.

A second ancillary contention made by Abrams—that the release tendered to him by the Trustee was sufficiently broad in its terms to release the Trustee's interests in

---

1. The Maryland Court of Appeals has recently held that under appropriate circumstances a court should consider extrinsic evidence to determine in the first instance if the terms of an agreement are ambiguous. *See Morgan v. Cohen,* 309 Md. 304, 317, 523 A.2d 1003, 1009 (1987). In light of this holding, Abrams is clearly incorrect in relying upon abstract definitions of the term "claims".

2. If Abrams had established before Judge Small that what he paid under the consent order was commensurate with the value of the Trustee's interests in the two partnerships, perhaps a different result would be indicated. However, Abrams made no such showing. To the contrary, Abrams virtually conceded that there was a substantial disproportionality between what he paid under the consent order and what the

Trustee would have been required to give up in exchange under Abrams' interpretation of the order. Thus, at the hearing before Judge Small counsel for the Trustee stated that "the Trustee simply did not intend to give up interests which are quite valuable, worth, according to our information, well over $300,000, in exchange for a settlement of this counterclaim. It simply was not what we had negotiated, not what we had intended, and not, what I believe, we were authorized to do." Counsel for Abrams responded only by alluding to "what the Trustee may now feel is a very valuable claim, so that he may now feel that he made a bad deal. There's no excuse for being able to renege on the clear language of the relief and the dismissal with prejudice." (Hearing transcript, at 15).

the two partnerships—likewise fails.[3] This release, like the dismissal of the counterclaim, was intended to effectuate the consent order and must be interpreted in light of it. The parties themselves both contemporaneously understood that it was so limited; the Trustee tendered it after having refused to execute Abrams' proposed release (because that release would have included the interest in the two partnerships); and Abrams himself contested the release because he believed it was too narrow. Furthermore, if the Trustee had been attempting to release more claims than those covered by the consent order, he would have been acting without authority and his action would have been null and void. *See generally* 2A J. Moore & L. King, *Collier on Bankruptcy* Paragraph 27.05, at 1096 (14th Ed.1978).

For these reasons the ruling of the Bankruptcy Court is affirmed.

---

**3.** This release covered "all manner of debts, dues, contracts, agreements, judgments, damages, actions, causes of action, suits, proceedings, claims, counterclaims and demands whatsoever, in law or equity, which were known by the Trustee to exist as of June 3, 1985, including, without limitation, the claims alleged by the Trustee in his Counterclaim."