839 F.2d 1035
 Michael WELSH, a minor By and Through his mother and next
friend, Kathleen WELSH; Kathleen Welsh; Patrick
Welsh, Plaintiffs-Appellants,
v.
GERBER PRODUCTS, INC., a Michigan Corporation; Century
Products, Inc., an Ohio Corporation; Sears
Roebuck and Company, a New York
Corporation, Defendants-Appellees,
v.
James A. VOIGT, II, Third Party Defendant.
 No. 87-1097.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 4, 1987.
Decided Feb. 24, 1988.
 
 Robert Allen Rohrbaugh (Rohrbaugh & Abbondanza, Rockville, Md., on brief), for plaintiffs-appellants.
 Deborah Sweet (Louis G. Close, Jr., Whiteford, Taylor & Preston, Baltimore, Md., on brief), for defendants-appellees.
 Before HALL and MURNAGHAN, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 In this personal injury action brought pursuant to diversity jurisdiction, Michael Welsh, a minor, and his parents, Kathleen and Patrick Welsh ("the Welshes") appeal an order of the district court granting summary judgment in favor of Gerber Products, Inc., Century Products, Inc., and Sears Roebuck and Company (collectively "Gerber"). The Welshes sought to recover damages for injuries suffered in 1983 by Michael Welsh in a two-automobile accident while riding in an infant car seat manufactured and sold by Gerber. Applying Maryland law, the district court held that the undisputed existence of a satisfied judgment achieved in state court against the negligent driver of the second automobile precluded further action against other joint tortfeasors including Gerber. Because we conclude that the dispositive issue in this appeal presents a question of Maryland law which appears to be unsettled, we certify the question set forth in Part III of this opinion to the Maryland Court of Appeals, pursuant to that state's certification statute, Md.Cts. & Jud.Proc.Code Ann. Secs. 12-601 et seq.
 
 I.
 
 2
 On January 26, 1983, a station wagon occupied by the Welshes was struck by a van driven by James Voigt, II. All three members of the family were hurt, but Michael suffered head injuries that were of a particularly severe and permanent nature. At the time of the accident, Michael was sitting in a Century 200 car seat manufactured by Gerber. For reasons yet unsettled, the seat failed to restrain the child and he was thrown forward by the force of the accident.
 
 
 3
 On February 9, 1984, the Welshes brought a negligence action in the Circuit Court of Maryland for Montgomery County against Voigt. The parties subsequently agreed on June 18, 1985, to settle the litigation for a payment equal to the policy limits of Voigt's automobile insurance coverage. The proposed settlement was announced in open court with plaintiff's counsel stating that "We are accepting the policy limits without prejudice to any rights we have against other individuals, or insurance carriers." The court approved the settlement subject to the preparation of an order and directed that a docket entry be made reflecting that the case had been terminated by settlement. No such entry, however, was ever made.
 
 
 4
 On July 25, 1986, the parties executed a written copy of their agreement which provided for a payment of $290,423.00 by Voigt's insurance carrier to Continental Casualty Company ("Continental"). Continental, as payor of a "structured" payout arrangement, was to make both immediate and deferred payments to Michael Welsh.[1] The Welshes also executed a release in favor of Voigt which purported to retain all claims against other tortfeasors subject to the pro rata reduction provided in the Maryland Uniform Contribution Among Tortfeasors Act, Md.Ann.Code Art. 50 Secs. 16-24.
 
 
 5
 It appears, however, that Voigt was unwilling to terminate the case purely by agreement with Kathleen and Patrick Welsh, thereby risking additional litigation when Michael Welsh reached maturity. Accordingly, Voigt insisted that a judgment be entered that would fully terminate any liability he might have arising from the accident.
 
 
 6
 On July 26, 1985, the parties filed a joint motion for approval of the negotiated settlement agreement. The court approved the agreement. Then, with the consent of the parties, the court signed an order entering judgment against James Voigt and in favor of the Welshes. The parties filed a "Statement of Satisfaction of Judgment" reflecting the fact that Voigt's insurance carrier had made the agreed payment to Continental. Finally, the clerk entered the judgment "PAID AND SATISFIED" on the docket sheet and assessed costs against Voigt.
 
 
 7
 On January 21, 1986, the Welshes filed the instant action alleging that the car seat in which Michael was seated at the time of the accident failed to restrain him and thus was the proximate cause of the injuries sustained.[2] The defendants moved for summary judgment on the ground that the satisfied state judgment against Voigt precluded, as a matter of law, any effort to recover damages on behalf of Michael for the same injury. The district court agreed and summary judgment was granted. This appeal followed.
 
 II.
 
 8
 At common law, the release of a claim against one joint tortfeasor by an injured party released all. In the eyes of the law, the plaintiff's harm was the product of concerted action and all defendants were jointly and severally liable for the entire injury. There was, therefore, but one cause of action and a plaintiff was not permitted to segment the litigation by piecemeal resolution. It was assumed that to allow otherwise would open the door for multiple recoveries for the same injury.
 
 
 9
 Confusion ensued in the nineteenth century when courts began the practice of consolidating all related claims into one case. As a consequence of liberalized joinder rules, the term joint tortfeasor was soon expanded beyond its previous definition to include individuals whose combined actions had produced injury but who had not acted in conscious concert. Although these "concurrent tortfeasors" could not at common law have been joined in a single action and thus, would not have been subject to the rule of "release one, release all," the linguistic evolution extended the benefits of the rule to such defendants. In many jurisdictions, it was routinely held that a release of one tortfeasor whether joint or concurrent automatically released all despite express reservations to the contrary in the language of the document. See Prosser, Joint Torts and Several Liability, 25 Cal.L.Rev. 413 (1937).
 
 
 10
 Recent tort law has reacted against the perceived rigidity and inequity of this rule by distinguishing a release from a satisfaction and by liberalizing the doctrine of release. In simplest terms, a satisfaction is an acceptance of full compensation for an injury while a release is a partial abandonment of a cause of action. Although the public policy against double recoveries continues to limit a plaintiff to one satisfaction regardless of which tortfeasor provides it, modern law now generally recognizes that a bargained release of one tortfeasor does not always amount to a full satisfaction. In such cases, the plaintiff remains free to pursue additional compensation from the non-released parties subject to a proportional reduction in the ultimate recovery which would reflect the payments achieved from the released tortfeasor.[3]
 
 
 11
 Conceptually, a satisfied judgment by a court of competent jurisdiction against one tortfeasor has been recognized as a satisfaction rather than a limited release. As the district court in this instance noted, a judgment follows a judicial assessment of both liability and injury. The damages determined are thus presumed to be full and adequate compensation for the plaintiff's suffering and the payment of the damages by even one tortfeasor concludes the plaintiff's cause of action.[4]
 
 
 12
 On appeal, the Welshes contend that the district court's grant of summary judgment was based upon an erroneous interpretation of Maryland law. Specifically, appellants argue that the parties intended and, in fact, did resolve the claim against Voigt through an accord and partial release. They further argue that the subsequent state court judgment was simply a procedural formality to protect Voigt from further litigation rather than a true adjudication of their claims. The appellants also argue that even if the payment in the state litigation is treated as a product of a judgment rather than a private settlement, the full satisfaction has not yet been paid and their claims against other parties still survive. Finally, appellants contend that the recent decision of the Maryland Court of Appeals in Morgan v. Cohen, 309 Md. 304, 523 A.2d 1003 (1987), clearly demonstrates that a satisfied judgment against one tortfeasor does not automatically preclude further litigation against the remaining tortfeasors.
 
 
 13
 The bulk of appellant's contentions are unpersuasive. Our review of Maryland law does not convince us that a validly entered judgment can be ignored or treated as a minor formality as appellants seem to suggest. Nor do we find merit in appellant's claim that a full satisfaction has not been received because payments due pursuant to the state judgment remain to be paid. Clearly Voigt, through his insurance carrier, has paid the full monetary judgment. The fact that the appellants have elected to receive the payments in a deferred arrangement with a third party does not affect the fullness of the satisfaction received from Voigt.
 
 
 14
 We are, however, troubled by the implications of Morgan v. Cohen, supra, as it relates to the correct application of Maryland law in this instance. In one of the two cases consolidated in Cohen, a plaintiff sustained certain injuries in an automobile accident. The plaintiff then allegedly suffered additional harm through the malpractice of her treating physician. In a subsequent action against the physician, the defendant asserted that an order of satisfaction entered in the plaintiff's action against the driver of the automobile barred the malpractice action against him. The Maryland Court of Appeals disagreed. Although in the modern sense, the doctor and the negligent driver were joint tortfeasors, the court concluded that a second action against the physician did not implicate the possibility of a double recovery because the damage inflicted by each tortfeasor was amenable to separation. In the Maryland court's view, a satisfied judgment did not bar further claims unless it clearly compensated the plaintiff for all injuries.
 
 
 15
 At first glance, Cohen would appear to be distinguishable from the circumstances presented in this case. Michael Welsh's injuries, unlike those suffered by the plaintiff in Cohen, were all inflicted simultaneously. Moreover, it seems most unlikely that the damages in Welsh are susceptible to division into categories based on the actions of the various tortfeasors. Nevertheless, we are unwilling to hold at this juncture that Cohen is inapposite.
 
 
 16
 The Cohen court expressed a certain dissatisfaction with the mechanical operation of the law in joint tortfeasor cases particularly when it conflicted with the unambiguous contrary intent of the parties. In so doing, the court criticized certain of its own prior decisions including Grantham which was relied upon by the district court in this instance. It appears that Maryland law in this area is in a state of change. We are therefore unwilling to decide without further guidance whether Cohen is simply a treating physician case as appellees contend, or whether it is, as the appellants argue, a broad expansion of an injured party's right to proceed separately against concurrent tortfeasors.
 
 III.
 
 17
 Accordingly, we certify the following question to the Maryland Court of Appeals:
 
 
 18
 Under Maryland law does the entry of a satisfied judgment order in Welsh v. Voigt in the Circuit Court for Montgomery County, Maryland, preclude as a matter of law, any further claims by the Welshes against Gerber et al for injuries suffered by Michael Welsh in the January 23, 1983, automobile accident.
 
 
 19
 This opinion shall constitute the statement of relevant facts required by the Maryland certification procedure, Md.Cts. & Jud.Proc.Code Ann. Sec. 12-603 (1984).
 
 
 20
 AN ORDER WILL ISSUE.
 
 
 
 [1]
 Under the deferred payment plan, Michael Welsh will receive payments in the nature of an annuity well into the twenty-first century
 
 
 [2]
 The injuries described in the complaint against Gerber were essentially identical to those alleged in the state negligence action against Voigt
 
 
 [3]
 In Maryland, the modern doctrine is expressed in statutory form by the Maryland Uniform Contribution Among Tortfeasors Act, Md.Ann.Code, Art. 50 Secs. 16-24. Section 19 of the Act specifically provides that:
 A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.
 
 
 [4]
 This was surely the rule in Maryland until 1987. See e.g. Bell v. Allstate Insurance Co., 265 Md. 727, 291 A.2d 478 (1972); Grantham v. Board of County Commissioners for Prince George's County, 251 Md. 28, 246 A.2d 548 (1968)