849 F.2d 605
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In the CASE OF Joel KLINE, Debtor.
Donald H. ABRAMS, Creditor-Appellant,
v.
Eugene M. FEINBLATT, Trustee, Trustee-Appellee.
 No. 88-3009.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 5, 1988.
Decided: May 31, 1988.
 
 Leonard R. Goldstein (Christopher Chia-Chi Tsien, Goldstein and Baron, Chartered, on brief), for appellant.
 Lawrence D. Coppel (Thomas D. Renda, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and SPROUSE, Circuit Judges, FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal is from a district court decision reviewing a bankruptcy judge's interpretation of a consent order between a trustee in bankruptcy and a former business associate of the bankrupt's. The district court, affirming the bankruptcy judge, ruled in favor of the trustee's position. We affirm.
 
 
 2
 * In 1973, Joel Kline was forced into involuntary bankruptcy by his creditors. In December 1980, Donald Abrams, claimant herein, a former business associate of the bankrupt's who had been involved with him in a number of real estate syndication deals, filed a "complaint for reclamation" against the trustee, alleging that two notes in the trustee's possession belonged to Abrams. The trustee responded by filing an answer denying the claim and a three-count counterclaim, which was subsequently amended to include a fourth count. In count I of the counterclaim the trustee alleged that Abrams had served as Kline's partner, agent or nominee in numerous business transactions and might therefore have in his possession money and other assets belonging to the bankrupt. Count I also alleged that Abrams had previously executed an agreement with the trustee in which he acknowledged that the bankrupt owned interests in--and was therefore entitled to receive distributions from--Abrams' interest (presumably as general partner) in several real estate syndications that Kline and Abrams had set up. Included in these were two partnerships, the Mott Industrial Limited Partnership and the Montecito Limited Partnership. Count I further alleged that Abrams had promised in the same agreement to take certain specific steps to assist the trustee in unraveling the accounts of Abrams and the bankrupt: to provide the trustee with a list of all partnerships in which Abrams had held interest since 1968; to allow the trustee to review the books and records of those partnerships; and to "[e]ngage in good faith negotiations to resolve certain disputed claims with the Trustee." Count I concluded with allegations that Abrams had failed to perform the promises made in this agreement, and that "[e]xcept for the acknowledgments set forth in the annexed Agreement, [he] ha[d] refused without reason, justification or excuse to provide any information to the Trustee concerning his dealings with the Bankrupt in response to the Trustee's demand therefor." Accordingly the trustee asked the bankruptcy court to issue an order requiring Abrams to carry out the promises in the agreement, to account to the trustee for all property he had received in his capacity as the bankrupt's agent, partner, or nominee, and to turn over to the trustee all such property which, upon an accounting, was determined to belong to the bankrupt.
 
 
 3
 Abrams filed an answer to the counterclaim in which he admitted making the agreement but alleged that it was no longer enforceable, having expired several years earlier. Abrams then moved for summary judgment on both his claim for reclamation and the trustee's counterclaim for an accounting. In the papers filed in support of his motion, Abrams again acknowledged that the bankrupt had owned a percentage of Abrams' partnership interests in the Mott and Montecito Partnerships, but asserted that there had as yet been no disbursements to the partners in those syndicates and that under the terms of the underlying partnership agreement between himself and Kline, Kline had forfeited those interests to Abrams when Kline was adjudicated bankrupt.
 
 
 4
 The bankruptcy judge denied Abrams' motions for summary judgment and the case went to trial. After the bankruptcy judge denied Abrams' complaint for reclamation of the notes in its entirety, the parties negotiated a settlement of the counterclaim before it could be tried. The bankruptcy judge approved this settlement in a consent order by whose terms Abrams was to pay the trustee $4,500 in exchange for the trustee's dismissal with prejudice of counts I, II, and IV of the amended counterclaim, and the execution by the trustee of a release to Abrams of "all claims against him which are known by the Trustee to exist."
 
 
 5
 Abrams then submitted a proposed release by which the trustee would have released all claims against "any partnership in which Abrams may be a general or limited partner." The trustee refused to sign this release, claiming that the settlement did not contemplate his release of the bankrupt's interest in the Mott and Montecito Limited Partnerships. The trustee then executed a release of his own, which released Abrams
 
 
 6
 in his individual capacity, together with his heirs, executors, administrators and successors, and each of them, of and from all manner of debts, dues, contracts, agreements, judgments, damages, actions, causes of action, suits, proceedings, claims, counterclaims, and demands whatsoever, in law or equity, which were known by the Trustee to exist as of June 3, 1985, including, without limitation, the claims alleged by the Trustee in his Counterclaim.
 
 
 7
 Abrams responded by filing a motion to compel the trustee to sign Abrams' version of the release and to relinquish all claims to the Mott and Montecito Partnership assets. After holding a hearing on the motion, the bankruptcy judge issued a memorandum opinion and order ruling in favor of the trustee. The judge ruled first that the consent order did not require the trustee to release his claims against all partnerships in which Abrams was involved, and that the release executed by the trustee was consistent with the settlement agreement. Second, he ruled that the release actually executed by the trustee did not preclude the trustee from recovering the bankrupt's interest in the Montecito and Mott Limited Partnerships.
 
 
 8
 Abrams appealed to the district court, which affirmed the bankruptcy court's decision. This appeal followed.
 
 II
 
 9
 The dispositive issue is the proper interpretation of the provision in the consent order requiring the trustee to release "all claims against [Abrams] which are known by the Trustee to exist." The trustee argues, as he has throughout, that his alleged right to recover the bankrupt's interests in Abrams' partnership interests in the two syndicates is not a "claim" within the meaning of the consent order, because Abrams conceded this right long before the trustee's counterclaim was filed. Abrams, on the other hand, asserts that the plain meaning of the words "all claims" includes the trustee's right to recover those alleged interests. The bankruptcy court acknowledged that the issue was "not as clear as the Trustee would have us believe," but nonetheless concluded that the consent order did not contemplate a release of the trustee's ownership interests in those two partnerships, though it did contemplate release of any claims for distributions from those partnerships which had accrued at the time of the settlement.
 
 
 10
 The term "all claims" is properly treated as ambiguous under controlling Maryland law. Under that law the circumstances under which a contract is executed may be considered in deciding whether any of its terms are ambiguous. See Morgan v. Cohen, 523 A.2d 1003, 1009 (Md.1987). Given the circumstances under which this consent order was executed, the critical provision could be read either to require the trustee to release all rights to any property in Abrams' name, or simply to release all claims against Abrams that could have been brought at the time of the settlement. The bankruptcy judge adopted the latter interpretation. On this basis, he found that the consent order did not require the trustee to release his alleged ownership rights in Abrams' interests in the Mott and Montecito Partnerships, for the trustee could not have brought a claim based on those rights at the time of the settlement. There had been no disbursements to the partners at the time, the property they owned had not yet been resold, and a dissolution of the syndicates was apparently not a viable option under the applicable state partnership law.
 
 
 11
 This interpretation of the contextually ambiguous provision was not clearly erroneous, and the district court properly affirmed in a decision which essentially accepted the bankruptcy judge's interpretation. See Bankr. Rule 8013 (clearly erroneous standard applies in review of bankruptcy judge's findings). The consent order's reference to existing claims suggests that the parties meant to refer only to claims that were actionable at the time the consent order was entered. Furthermore, the settlement of the counterclaim was for a mere $4,500, while the bankrupt's interest in the two syndicates was valued at over $300,000. The bankruptcy judge's interpretation was thus a wholly plausible one.
 
 
 12
 Abrams' fall-back argument that the release actually executed by the trustee was broad enough to release the trustee's interest in the two partnerships is also without merit. First, as the district court noted, the trustee's release was designed to effectuate the consent order; if the consent order itself did not contemplate a release of those interests, it follows that the release implementing it was not intending to do so either. Second, the trustee must have executed this release, instead of the broader one proposed by Abrams, precisely because the trustee believed it would not release those interests. Third, Abrams' original objection to the trustee's release was that it did not release Abrams' alleged interests in the two partnerships; the notion that the release actually executed might be construed to effect such a release apparently did not occur to him until the hearing on the motion to compel.
 
 
 13
 Abrams' further arguments are without merit and do not warrant discussion.
 
 
 14
 AFFIRMED.